UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA BRENTAR, individually and as Executrix of the Estate of George Brentar, | : : : | Case No. 09-CV-2685 |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN M. O'MALLEY |
| v. | : | |
| FORD MOTOR COMPANY, et al., | : | **MEMORANDUM & ORDER** |
| Defendants. | : | |

Pending before the Court are two motions: (1) Defendant Statewide Ford Lincoln-Mercury, Inc.'s ("Statewide") Motion to Dismiss (Doc. 5) ("Motion to Dismiss"); and (2) Plaintiff Linda Brentar's Motion to Remand to State Court (Doc. 11) ("Motion to Remand"). On December 15, 2009, this case was referred to Magistrate Judge David S. Perelman for full pre-trial supervision, including preparation of a Report and Recommendation ("R&R") addressing the pending motions. (Doc. 7.)

On March 11, 2010, Magistrate Judge Perelman issued an R&R recommending that this Court grant Plaintiff's Motion to Remand, and return this matter to the Cuyahoga County Court of Common Pleas, from which court the case was removed. (Doc. 23.) Defendants Ford Motor Company ("Ford") and Statewide filed objections to the R&R on March 25, 2010 (Doc. 24). Plaintiff responded to Defendants' objections on April 7, 2010 (Doc. 25), and Defendants Ford and Statewide filed a reply in support of their objections on April 14, 2010 (Doc. 26). Defendants' objections are fully briefed and ripe for adjudication. For the reasons articulated below, the Court **OVERRULES** Defendants' objections, **ADOPTS** the R&R, and, thus, **GRANTS** Plaintiff's Motion to Remand (Doc. 11).

I.  **BACKGROUND**

The R&R accurately sets forth the facts relevant to Plaintiff's Motion to Remand. In the interest of efficiency, therefore, the Court adopts the R&R's articulation of the factual and procedural background. To the extent necessary, if any, the Court will elaborate on factual and/or procedural issues worthy of additional consideration. The following is a brief summary of pertinent facts.

The underlying facts are not in dispute: on October 10, 2007, George Brentar, a City of Euclid Police Officer, was involved in a fatal single-vehicle accident while driving a 2007 Ford Crown Victoria Police Interceptor ("the Vehicle"). The parties agree that: (1) the Vehicle was manufactured by Defendant Ford; and (2) the City of Euclid purchased the Vehicle from Defendant Statewide. (Doc. 1-1 at ¶¶ 6-7; Doc. 17 at 2.)

On October 5, 2009, Plaintiff Linda Brentar, individually and as executrix of the Estate of George Brentar, filed a Complaint for Personal Injury, Wrongful Death, and Product Liability against Defendants Ford and Statewide in the Cuyahoga County Court of Common Pleas.[1] Brentar seeks to hold Defendant Statewide liable as a supplier under O.R.C. § 2307.78 on grounds that: (1) Statewide was negligent; and (2) the Vehicle did not conform, when it left Statewide's control, to a representation made by Statewide. (Doc. 1-1 at ¶ 29.)

On November 17, 2009, Defendants Ford and Statewide filed a notice of removal on diversity jurisdiction grounds. It is undisputed that Brentar is a resident of Mentor, Ohio, Defendant Ford is a Delaware corporation with its principal place of business in Michigan, and Defendant Statewide is an Ohio corporation with its principal place of business in Ohio. Although Brentar and Defendant

---

[1] Although Plaintiff Linda Brentar brings this lawsuit on her own behalf and as executrix of her husband's estate, for ease of reference, the Court refers only to Linda as the plaintiff.

Statewide are both Ohio residents, Defendants assert that complete diversity of citizenship exists because Brentar fraudulently joined Statewide to defeat federal jurisdiction. Brentar disputes this assertion of fraudulent joinder and moves to remand on the basis that she has "a colorable cause of action against Statewide, as a supplier, under the Ohio Products Liability Act because [she has] alleged [that] Statewide was negligent and that the subject vehicle failed to conform to representations made by Statewide." (Doc. 18 at 2.) In response, Defendants Ford and Statewide argue that remand is improper because Brentar has neither stated a "facially plausible 'failure to conform to representation' claim against Statewide" under O.R.C. § 2307.78(A)(2), nor has she "made any factual allegations to amplify her purported negligence claim." (Doc. 17 at 2.)

## II.     MAGISTRATE JUDGE PERELMAN'S R&R

In his R&R, Magistrate Judge Perelman found that: (1) Brentar submitted sufficient evidence demonstrating that she has a colorable claim against Defendant Statewide; and (2) Defendants failed to satisfy their heavy burden of showing that Defendant Statewide was fraudulently joined. (Doc. 23 at 8-9.) In reaching these conclusions, Magistrate Judge Perelman relied, in large part, on two affidavits submitted by the parties in support of their respective positions. First, the Magistrate Judge considered the Declaration of Attorney Bradley Lakin ("Lakin Declaration"), which was submitted as an attachment in support of Brentar's Motion to Remand. (Doc. 11-1.) Specifically, Magistrate Judge Perelman noted that:

> Mr. Lakin . . . provides supporting documentation for some of his allegations, including documents showing that as early as October of 2001 Ford sent out a bulletin to all of its dealers, and to more than 18,000 police fleets, informing of defects causing rear-end collisions which, in turn, result in fuel fed fires. Those fires prompted Ford to offer a Kevlar trunk pack as an option to its customers through dealers, including Statewide.
>
> According to Mr. Lakin, in October of 2002 Ford notified its dealers and fleet owners

3

> that protective shields needed to be installed in CVPIs in order to protect the fuel tank from puncturing during rear-end collisions. . . . Mr. Lakin further states that although the Fire Suppression System was first offered as an option on the 2005 CVPI, through dealers including Statewide, neither the Kevlar trunk pack nor the Fire Suppression System was offered as standard equipment on the CVPI. He averred that the information regarding the fuel tank fires and the products developed to address the problem were known to Statewide prior to selling [the Vehicle] that Officer Brentar was driving at the time of his death, yet Statewide failed to warn its purchasers of such risk or of the products available to protect its end users from danger.

(Doc. 23 at 5-6.) Based on Mr. Lakin's allegations that "Ford's dealers and fleet owners were informed of the problems [with the CVPIs] and of the products developed to address those problems" but that Statewide took no corrective action, the Magistrate Judge concluded that Plaintiffs made a sufficient showing that they have a colorable claim against Statewide. (*Id*. at 8.)

Second, Magistrate Judge Perelman addressed the Affidavit of Statewide's Fleet Manager, Al Matarese ("the Matarese Affidavit"), which was filed in support of Defendants' Brief in Opposition to Plaintiff's Motion to Remand, and concluded that it was insufficient to demonstrate fraudulent joinder. In his affidavit, Mr. Matarese: (1) describes the procedure by which government agencies purchase police vehicles; (2) provides a description of Defendant Statewide's limited role in the process, including a representation that "[i]t is Statewide's standard practice not to make any statements or representations regarding the design or performance of the CVPI vehicles" to government agencies; and (3) states that he does not recall having any communications with anyone at the City of Euclid regarding the design or performance of the Vehicle. (Doc. 17-1 at 2-5.)

The Magistrate Judge found that, at this stage in the litigation, Mr. Matarese's representations are "not definitive evidence that the plaintiffs are prevented 'from ever establishing' the requisite elements necessary to succeed on a negligence claim, as the possibility exists that the procedure was not adhered to in this case, or that Mr. Matarese's credibility could be contested by evidence put

4

forth by the plaintiffs." (Doc. 23 at 7.) Accordingly, Magistrate Judge Perelman recommended that this Court grant Brentar's Motion to Remand.

### III. DEFENDANTS' OBJECTIONS TO THE R&R

On March 25, 2010, Defendants timely filed two objections to Magistrate Judge Perelman's R&R. First, Defendants object on the basis that the R&R "relies upon 'evidence' submitted by Plaintiff that is not evidence at all: a self-serving declaration by one of Plaintiff's own counsel, Brad Lakin, that lacks foundation and contains improper legal conclusions." (Doc. 24 at 2.) Second, Defendants argue that, even if the Lakin Declaration were proper evidence, it "does not establish facts under which Plaintiff could recover from Statewide." (*Id*. at 5.)[2] Specifically, Defendants contend that the Lakin Declaration "includes only information that Ford – not Statewide – communicated to the general public" and "[a]ll of that information was publicly available long before Statewide sold the subject vehicle to Euclid." (*Id*. at 5.)

---

[2]Defendants further argue that, because the Magistrate Judge did not specifically conclude that Brentar could state a cause of action against Statewide for failure to conform to a representation under O.R.C. § 2307.78(A)(2), Statewide was fraudulently joined with respect to Brentar's failure-to-conform claim. (Doc. 24 at 7-8.) As such, Defendants indicate that they "raise no objections to the R&R's findings regarding Plaintiff's failure-to-conform claim." (*Id*. at 8.) In other words, Defendants suggest that, because the R&R does not explicitly state that Brentar has a colorable claim with respect to *both* her negligence *and* failure to conform supplier liability claims, the Magistrate Judge *must* have concluded that Defendant Statewide was fraudulently joined as to the failure to conform claim. Defendants cite no case law supporting this argument, and the Court has found none. The R&R concludes that "there has been a sufficient showing by the plaintiffs herein that they have a colorable claim against Statewide." (Doc. 23 at 8.) Having concluded that *any* colorable claim was asserted against Statewide, the Magistrate Judge correctly concluded that remand was then appropriate. There was no need for the Magistrate Judge to consider whether the failure to conform claim provided an *alternative* basis for remand; the R&R's silence on that claim is not the same as a negative finding as to it.

5

### IV. STANDARD OF REVIEW

In cases that are referred to a magistrate judge for preparation of an R&R, the Federal Magistrates Act requires that a district court conduct a *de novo* review only of those portions of a R&R to which the parties have made an objection. 28 U.S.C. § 636(b)(1)(C). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.; see also* Fed. R. Civ. Pro. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

Here, because Defendants timely filed two primary objections to the R&R, this Court reviews *de novo* only those portions to which an objection has been made. In these circumstances, *de novo* review requires "at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's report and recommendation." *Lardie v. Birkett*, 221 F.Supp.2d 806, 807 (E.D. Mich. 2002) (citing 12 Wright, Miller & Marcus, Federal Practice and Procedure § 3070.2 (2d Ed. 1997)). If the court accepts the report and recommendation, it is not required to "state with specificity what it reviewed; it is sufficient for the Court to say that it has engaged in a *de novo* review of the record and adopts the Magistrate Judge's report and recommendation." *Id*.

### V. DISCUSSION

The sole question presented in the Motion to Remand is whether Defendant Statewide was fraudulently joined. If it was, then this Court can disregard Statewide's citizenship and can retain jurisdiction over this dispute. *See Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th

6

Cir. 1999) (recognizing that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds").

To prove fraudulent joinder, the removing party must show that there is no "reasonable basis" upon which liability might be imposed upon the non-diverse party. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal citation omitted). The Sixth Circuit has recognized that, "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [a court] must remand the action to state court." *Id*. In deciding whether a colorable claim exists, the Court must resolve "all disputed questions of fact and ambiguities in the . . . state law" in favor of the non-removing party. *Id*.

The standard for fraudulent joinder is accurately set forth in the R&R, and Defendants do not argue that the legal standard used by Magistrate Judge Perelman is incorrect. Rather, Defendants contend that the Magistrate Judge erred "in concluding that Plaintiff has established a colorable claim of negligence against Statewide." (Doc. 24 at 2.)

The first issue Defendants raise in their objections is whether the Court can consider the Lakin Declaration to determine if there has been fraudulent joinder. Defendants argue that it is not proper evidence because it is self-serving and lacks foundation. Second, Defendants argue that, even if the Lakin Declaration is properly before the Court, it demonstrates that Brentar cannot establish a colorable claim of negligence against Defendant Statewide. The Court will address each objection in turn.

### A. The Court Can Consider Attorney Lakin's Declaration.

Defendants object to the R&R on the basis that it "relies ***solely*** on the declaration of Plaintiff's attorney Brad Lakin." (Doc. 24 at 3.) Defendants argue that this reliance was improper

7

because the "declaration of a party's attorney is not competent evidence on summary judgment." (*Id*. at 4.) In response, Brentar emphasizes that courts are permitted to look at "summary judgment like" evidence, including affidavits, but that the standard for fraudulent joinder is not the same as the summary judgment standard. (Doc. 25 at 3.) The Court finds Brentar's arguments well-taken.

When conducting a fraudulent joinder inquiry, a court can "look beyond the face of the complaint" to determine whether the plaintiff's claims are "obviously fraudulent or frivolous." *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). As this Court has previously indicated, a court "can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a non-diverse defendant." *King v. Centerpulse Orthopedics, Inc.*, No. 05cv1318, 2006 U.S. Dist. LEXIS 7028, \*5 (N.D. Ohio Feb. 24, 2006) (internal quotation omitted).

Defendants cite to several cases for the proposition that "evidence presented on summary judgment must comply with the Rules of Evidence" and that an "affidavit stating what the attorney believes or intends to prove at trial is insufficient to comply with the burden placed on a party opposing a motion for summary judgment." (Doc. 24 at 4 citing *King v. National Indus., Inc.*, 512 F.2d 29, 34 (6th Cir. 1975)). Defendants' arguments miss a critical distinction: while a court can employ a summary judgment-like *procedure* – meaning that it can look to affidavits and deposition testimony – it is not required to employ a summary judgment inquiry or apply a summary judgment *standard* to fraudulent joinder, "because the merits of an action are distinct from the jurisdictional issues presented by such a claim." *Eckhart v. DePuy Orthopaedics, Inc.*, No. 2:03-cv-1063, 2004 U.S. Dist. LEXIS 25211, \*11 (S.D. Ohio. Mar. 3, 2004) (internal quotation omitted). Simply put,

8

the cases Defendants cite addressing whether an affidavit is sufficient to satisfy the summary judgment standard are inapplicable here.

To decide whether a non-diverse defendant was fraudulently joined, a court can "properly consider background facts . . . regardless of whether those facts were formally pleaded in the Complaint at the time of removal." *Herring v. Beasley*, No. 05-0215-WS-B, 2005 U.S. Dist. LEXIS 44662, *24 n.9 (S.D. Ala. June 21, 2005). An affidavit from counsel can supply facts necessary for the court to conduct a fraudulent joinder inquiry. *See id.* (noting that, in deciding the issue of fraudulent joinder, "the Court can consider the facts alleged in Attorney Holston's Affidavit," including specific allegations connecting the non-diverse defendant to the motor vehicle accident, and concluding, based on those facts, that the plaintiff "unquestionably had at least a possibility of stating a valid cause of action against" the non-diverse defendant); *see also McWilliams v. Monarch Rubber Co.*, 70 F.Supp.2d 663, 665-66 (S.D. W.Va. 1999) (finding that plaintiff's counsel's affidavit, which offered a brief statement of the facts, "militates strongly against granting Defendants' motions at this juncture" particularly since the "facts involved at this stage of the case are basically the facts adduced by Defendants" and granting the motions would eliminate the plaintiff's claims before he has a chance to "develop his version of the case"); *see also Hamzey v. Bayer Corp.*, No. 10cv0526, 2010 U.S. Dist. LEXIS 50073, *8-9 (S.D. Cal. May 19, 2010) (considering, among other things, a declaration from plaintiff's counsel linking the non-diverse defendant to the cause of action as the distributor of the medication, and finding that plaintiff adequately set forth a claim against the non-diverse defendant).

Here, Brentar seeks to hold Statewide liable under the Ohio Products Liability Act in its capacity as supplier of the Vehicle. The Complaint alleges that: (1) Defendant Statewide supplied,

9

marketed, and sold the Vehicle to the City of Euclid; (2) Statewide was negligent in its capacity as a supplier; (3) the Vehicle did not conform, when it left Statewide's control, to a representation made by Statewide; and (4) while driving the Vehicle, George Brentar was involved in a fatal accident, which included a fuel fire. Although the Complaint does not specifically identify Statewide's negligent act(s) or misrepresentation(s), it clearly charges Statewide with negligence and making misrepresentations in connection with the sale of the Vehicle.

In support of her Motion to Remand, Brentar submitted an affidavit of counsel, along with some supporting documentation, alleging that Statewide knew of certain risks associated with operating CVPIs. According to Lakin, in October 2002, Ford notified its dealers and fleet owners that it was necessary to install protective shields into CVPIs to protect the fuel tank from puncturing during rear end collisions. (Doc. 11-1 at ¶ 5.) Specifically, Lakin alleges that Statewide's failure to warn purchasers of the risk of fire in rear end collisions without installation of a Kevlar trunk pack or fire suppression system, constitutes a negligent act. (*Id*. at ¶ 11.)

The Lakin Declaration provides additional background facts which suggest that Brentar has "at least a possibility of stating a valid cause of action" against Statewide. *See Herring*, 2005 U.S. Dist. LEXIS 44662 at *23. Notably, the Lakin Declaration clarifies that Brentar's negligence claim against Statewide stems from Statewide's alleged failure to warn of the risks of operating a CVPI without certain safety features.

Defendants have not cited, nor has the Court located, any case law preventing the Court from considering an affidavit or declaration of counsel in making its fraudulent joinder inquiry. Because the Court can consider "summary judgment type" evidence, including affidavits, the Court finds that it can properly consider the Lakin Declaration. Moreover, contrary to Defendants' allegation that

10

Magistrate Judge Perelman relied solely on the Lakin Declaration, it is clear that Judge Perelman also considered the Matarese Affidavit and concluded that it was insufficient to establish fraudulent joinder. As discussed below, the Court agrees that the allegations in the Matarese Affidavit do not conclusively demonstrate that there is *no possibility* that Brentar can establish a cause of action against Statewide under the Ohio Product Liability Act.

> **B.    The Court Cannot Say that Brentar Has No Claims Against Defendant Statewide Under the OPLA.**

Defendants next argue that, even if the Court considers the Lakin Declaration as competent evidence, it does not establish any facts under which Brentar can assert a products liability claim against Statewide. (Doc. 24 at 5.) The relevant inquiry is whether Brentar can state a colorable cause of action against Statewide under Ohio's Product Liability Act. *See King*, 2006 U.S. Dist. LEXIS 7028 at *5. If there is a "colorable basis" for predicting that Brentar may recover against Defendant Statewide, then the Court must remand this action to state court. *See id*. at *6.

A claim is not "colorable" if it is "wholly insubstantial and frivolous." *Wiseman v. Universal Underwriters Ins. Co.*, 412 F.Supp.2d 801, 803 (S.D. Ohio 2005) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1999)). That said, a claim can be "colorable" even if it ultimately cannot withstand a motion to dismiss in state court. *Id*. (citing *Batoff*, 977 F.2d at 852-53). Therefore, whether the plaintiff will ultimately recover against the non-diverse defendant is immaterial. *Carter v. Philip Morris Corp.*, 106 F.Supp.2d 768, 770 (E.D. Pa. 2000) ("Simply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action does not mean that the defendant's joinder was fraudulent."). If there is "*even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder

11

was proper and remand the case to the state court." *Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.").

The burden is on the removing party to show that the plaintiff cannot establish a cause of action against the non-diverse defendant under state law. *Alexander*, 13 F.3d at 949. Therefore, despite Defendants' repeated attempts to shift the burden to Brentar to come forward with evidence supporting each element of her claims – which is an argument more appropriately asserted in a Rule 12(b)(6) motion – the Court must determine whether Defendants have satisfied their heavy burden of establishing that Brentar has no possibility of stating a product liability claim against Statewide under Ohio law.[3]

In Ohio, product liability claims are governed by the Ohio Product Liability Act ("OPLA"). O.R.C. § 2307.71 *et seq*. Under the OLPA, a supplier can be liable for a product defect based on its own independent negligence or where it makes a representation and the product fails to conform to that representation when it leaves the supplier's hands.[4] *Little v. Purdue Pharma, L.P.*, 227

---

[3]In their objections, Defendants repeatedly attempt to shift the burden to Brentar:

- "Plaintiff has failed to come forward with any evidence to demonstrate that she has a colorable claim of negligence against Statewide" (Doc. 24 at 4);

- "Because she has no competent evidence to carry her burden, she instead relies upon flawed 'logical inference[s]'" (Doc. 26 at 3);

- "Plaintiff has not presented a shred of evidence on any of the elements of her claim." (Doc. 26 at 4)

[4]Under O.R.C. § 2307.78(B), a plaintiff can hold a supplier liable as if it were the manufacturer, if the manufacturer is potentially culpable but absent from the proceedings. Brentar does not seek to hold Statewide liable under this form of supplier liability.

F.Supp.2d 838, 851 (S.D. Ohio 2002). Here, Brentar seeks to hold Defendant Statewide liable under both theories of supplier liability.

### 1. Brentar's Negligence Claim

A supplier can be held liable under O.R.C. § 2307.78(A)(1) if it "was negligent and that negligence was a proximate cause of the harm for which the claimant seeks to recover compensatory damage." To recover against a supplier for products liability based on negligence, a plaintiff must show that the defendant owed her a duty, the defendant breached that duty, and that the injury proximately resulted from the breach. *Little*, 227 F.Supp.2d at 848-49.

Under O.R.C. § 2307.78(A)(1), a supplier can be liable for negligence "if it knew or had reason to know of the product defect" and failed to provide a warning of the defect. *King*, 2006 U.S. Dist. LEXIS 7028 at *11. A supplier has no duty to warn of "risks associated with a product that are common knowledge." *Chamberlain v. Am. Tobacco Co., Inc.*, 70 F.Supp.2d 788, 798 (N.D. Ohio 1997) (citation omitted); *see also Coyne*, 183 F.3d at 493 (finding that "Plaintiffs do not allege that the wholesalers and retailers knew of the so-called nicotine defect any sooner than members of the general public; thus, the wholesalers and retailers are excluded from product liability under § 2307.78(A)(1)").

Defendants argue that Brentar cannot state a colorable claim for negligence against Statewide because she cannot show that Statewide knew about alleged defects in the CVPIs any sooner than members of the general public. Specifically, Defendants argue that,

> the key question is whether Statewide had knowledge about the alleged defect greater than those who would ultimately purchase the product. Plaintiff has failed to demonstrate that Statewide did. That failure to plead and prove the facts necessary to establish a colorable claim against Statewide results in the conclusion that Statewide was fraudulently joined.

13

(Doc. 26 at 4.) As previously indicated, however, the burden of showing fraudulent joinder rests with the removing party. Notably, the Matarese Affidavit, which Defendants offer in support of removal, does not contain any allegations regarding whether Statewide had notice of the alleged safety issues with the CVPIs and if so, when it received notice of those issues.[5]

Although the Complaint does not allege that Statewide knew of the alleged defect before members of the public, the Lakin Declaration alleges that Statewide, along with other dealers and fleet owners, received information from Ford Motor Company regarding the need to install shields on CVPIs to protect the fuel tank from puncturing during rear end collisions. (Doc. 11-1 at ¶ 5.) Therefore, unlike the situation in *King*, where this Court found that there was no evidence that the supplier knew or had reason to know of the product defect, here, the Lakin Declaration alleges that Statewide knew or should have known of the defects with the CVPIs because it received notice of those defects from Ford. *See King*, 2006 U.S. Dist. LEXIS 7028 at *12-13 (noting that "King does not even allege that Intermedics had any reason to know that her knee implants were in any way defective"). According to Brentar, the Lakin Declaration raises an inference that "the general public was not aware of the dangers and defects in the [CVPI] fuel system." (Doc. 25 at 5.)

Having examined the allegations in the Complaint and the parties' affidavits, the Court concludes that there is at least some possibility that Brentar could state a cause of action against Defendant Statewide for negligence. The question for this Court is not whether Brentar will ultimately prevail against Statewide. Rather, the question is whether Brentar has a colorable claim

---

[5] Defendants argue that, because only government agencies purchase CVPI vehicles, the "general public" for purposes of this case is not really the "general public" and should instead be limited to government entities. (Doc. 26 at 3.) Defendants cite no authority for this proposition and the Court has found none. While Defendants ultimately might be correct on this point, this issue is more appropriately directed to the state court.

against Statewide.  *See Provencio v. Ford Motor Co.*, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, *16 (D.N.M. Sept. 29, 2005) (noting that the "test is not whether the Plaintiffs actually alleged a negligence claim, but whether 'there is no possibility that [the Plaintiffs] would be able to establish a cause of action against [the Defendants] in state court'") (citation omitted).  Based on the parties' briefing, and given the pre-discovery stage of this litigation, the Court cannot say that Brentar has no possibility of stating a colorable negligence claim against Defendant Statewide under the OPLA.

### 2. Brentar's Failure to Conform Claim

A supplier can be liable under O.R.C. § 2307.78(A)(2) if "the product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages."  Although it is unclear "what conduct is sufficient to constitute a representation under R.C. 2307.78(A)(2)," Ohio courts have "required some form of express conduct by the seller to maintain a cause of action based on a supplier's misrepresentation."  *Tekavec v. Van Waters & Rogers, Inc.*, 12 F.Supp.2d 672, 680 (N.D. Ohio 1998).

Defendants argue that Brentar has not alleged, and cannot establish, that Statewide made a representation to which the Vehicle failed to conform.  Although Defendants concede that Brentar need not provide the exact words of the representation in her Complaint, they allege that federal law "requires more than what Plaintiff has provided." (Doc. 17 at 8 n.4).  While it is true that the Complaint does not specifically identify Statewide's alleged representation regarding the Vehicle, when it was made, or to whom it was made, Brentar's allegations against Statewide track the basic

15

elements of a "failure to conform" claim under the OPLA: the Complaint alleges that Statewide made a representation to which the Vehicle failed to conform when it left Statewide's control. A failure to plead with specificity does not necessarily lead to the conclusion that there is no reasonable possibility that Brentar can state a claim against Statewide. There is at least a possibility that Brentar could cure any defect in her pleadings with an amendment. *See Cogburn v. 5 Star Life Ins. Co.*, No. 06-CV-462-JHP, 2007 U.S. Dist. LEXIS 19019, *11 (E.D. Okla. Mar. 16, 2007) (noting that, "a district court may consider the potential that an amendment might cure any defect in the pleadings as a basis for finding that a defendant has not met its burden of establishing fraudulent joinder").

Defendants offer the Matarese Affidavit to demonstrate that Brentar cannot establish a failure-to-conform claim against Statewide.[6] The Matarese Affidavit focuses on the procedure by which government agencies purchase police vehicles and Statewide's standard practices with respect to the sale of those vehicles. Although Matarese asserts that "Statewide's communications with government agencies typically [are] limited to an order form" and that it is Statewide's "standard practice" not to make any statements or representations regarding the CVPI vehicles, his affidavit does not completely preclude the possibility that those procedures were not followed with respect to the Vehicle.

At this preliminary stage, the Court is reluctant to find that Matarese's affidavit forecloses any reasonable basis for Defendant Statewide's liability, particularly since the Court, in making its fraudulently joinder inquiry, "must not make credibility determinations or make findings on the ultimate issues of fact." *See Siegel v. H Group Holding, Inc.*, No. 07 C 6830, 2008 U.S. Dist. LEXIS

---

[6]Defendants have attached, as exhibits to the Matarese Affidavit, documents relating to the sale of the Vehicle. In his Affidavit, Mr. Matarese states that those documents do not contain any statements or representations by Statewide "regarding the design or performance of the Subject Vehicle." (Doc. 17-1 at ¶ 14.)

16

30039, *13-14 (N.D. Ill. April 9, 2008). Merely presenting an affidavit stating that Statewide does not typically make representations in connection with the sale of CVPIs, and that Matarese does not recall making any representation to the City of Euclid or George Brentar, is insufficient for this Court to conclude that no such representation was made. *See Handy v. Wells Fargo Bank, N.A.*, No. CV07-2293-PHX-GMS, 2008 U.S. Dist. LEXIS 94543, *8 (D. Ariz. Nov. 12, 2008) ("Merely presenting an affidavit from Defendant Harland stating that she did not publish a defamatory statement is not sufficient to prove that her joinder was fraudulent."); *see also Momans v. St. John's Northwestern Military Academy, Inc.*, No. 99 C 8510, 2000 U.S. Dist. LEXIS 5129, *14 (N.D. Ill. April 20, 2000) ("If the court were to consider the denials made by the individual Defendants in their affidavits, it would be required to make a credibility determination and make findings on the ultimate issues of fact.").

Allowing the Matarese Affidavit to defeat the Complaint at this stage "would go far beyond the 'limited look' permitted" and "would be akin to conducting a summary judgment inquiry, or a converting of Defendant's request into a motion to dismiss, which is frowned upon." *See Dambaugh v. Mylan Bertek Pharm., Inc.*, No. 07-1132, 2007 U.S. Dist. LEXIS 83830, *4-5 (W.D. Pa. Nov. 13, 2007) (finding that the affidavit of defendant's counsel, which alleged that the defendant did not manufacture or distribute the drug at issue, "does not conclusively demonstrate the entire pertinent universe" of the defendant's involvement with the drug and thus cannot defeat the complaint); *see also Johnson Controls*, 2009 U.S. Dist. LEXIS 12586 at *9 (citing *Young*, 913 F.Supp. at 551 (declining to resolve the factual dispute raised by the parties' competing affidavits "in light of the pre-discovery phase of this litigation")).

Construing the available evidence in the light most favorable to Brentar, as this Court must

17

on a motion to remand, the Court finds that Defendants have not met their heavy burden of showing that Statewide was fraudulently joined solely to defeat federal jurisdiction. In reaching this conclusion, the Court does not express any opinion on the sufficiency of Brentar's allegations against Statewide or Brentar's likelihood of success on her claims against Statewide. The Court merely finds that it is not obvious from the face of the Complaint that Brentar has no possibility of stating a colorable claim against Defendant Statewide.

Based on the information available, the Court cannot find that Defendant Statewide was fraudulently joined. Because the Court cannot disregard Defendant Statewide's citizenship, complete diversity does not exist, and this case must be remanded to the Cuyahoga County Court of Common Pleas.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' objections to Magistrate Judge Perelman's R&R (Doc. 23) are **<u>OVERRULED</u>** and the Court hereby **<u>ADOPTS</u>** the R&R in its entirety. Accordingly, Plaintiff Linda Brentar's Motion to Remand (Doc. 11) is **<u>GRANTED</u>**. This case is hereby **<u>REMANDED</u>** to the Cuyahoga County, Ohio, Court of Common Pleas. Because the Court concludes that it lacks subject matter jurisdiction, it does not reach the merits of Defendants' Motion to Dismiss (Doc. 5). Therefore, Defendants' Motion to Dismiss is moot.

**IT IS SO ORDERED.**          <u>s/Kathleen M. O'Malley</u>
                               **KATHLEEN McDONALD O'MALLEY**
                               **UNITED STATES DISTRICT JUDGE**

**Dated: August 10, 2010**